# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Live Face on Web, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>Archevos Corporation and Scott E. Layne,<br><br>         Defendants. | Case No.: 17-cv-1487-WQH-NLS<br><br>**ORDER** |

HAYES, Judge:

  The matter before the Court is the Motion to Dismiss Under Rule 12(b)(2) (ECF No 12) filed by Defendant Archevos Corporation.

**I. Background**

  On July 21, 2017, Plaintiff Live Face on Web, LLC ("LFOW") initiated this action by filing the Complaint (ECF No. 1) against Defendants Archevos Corporation ("Archevos") and Scott E. Layne. On July 31, 2017, LFOW filed the First Amended Complaint (the "FAC") (ECF No. 4). The FAC is the operative complaint in this matter.

On October 10, 2017, Archevos filed a Motion to Dismiss Under Rule 12(b)(2) (ECF No. 12) as well as a Declaration of Scott Layne in Support of the Motion to Dismiss (the "First Layne Declaration") (ECF No. 12-2). On October 16, 2017, LFOW filed an Opposition to the Motion to Dismiss (ECF No. 14) along with the Declaration of Imran Vakil (ECF No. 14-1) and twelve Exhibits (ECF Nos. 14-2 and 14-3). On November 6, 2017, Archevos filed a Reply in Support of the Motion to Dismiss (ECF No. 16) as well as a Declaration of Scott Layne in Support of the Reply (the "Second Layne Declaration") (ECF No. 16-1).

## II. Facts and Allegations

LFOW is a Pennsylvania limited liability company. FAC at ¶ 5.

LFOW is a software company specializing in borderless video technology. LFOW is the developer and owner of "live person" software, which is an original work of authorship independently created by LFOW ("LFOW Code"). The LFOW Code allows a company to display a video of a "walking" and "talking" personal host who introduces a website to an online visitor.

*Id.* at ¶¶ 9–10.

Archevos is a Wyoming corporation. LFOW'S Exhibit 1, ECF No. 14-2, at 2. Scott Layne is the President of Archevos. First Layne Declaration, ECF No. 12-1, at ¶ 2. "Layne resides in Encinitas California." Answer of Defendant Scott Layne, ECF No. 11, at ¶ 7. Earl Hopper[1] holds stock in Archevos. Second Layne Declaration, ECF No. 16-1, at ¶ 6. Archevos leases an office in Arizona where it "meets clients and potential clients" and "conducts firm business such as board meetings. *Id.* at ¶ 5.

Archevos operates the website www.experdocs.com (the "Website"). FAC at ¶ 7; *see also* Second Layne Declaration at ¶ 8 (referring to "the Archevos website."). Experdocs is a software product that stores files electronically. Second Layne Declaration

---

[1] LFOW refers to "Earl Hooper," who LFOW contends "is the second officer of Archevos (the Vice-President, COO and CFO)." (ECF No. 14 at 3). For the purposes of this motion, the Court assumes that the person LFOW refers to as "Earl Hooper" is the same person that Archevos refers to as "Earl Hopper," and elects to refer to this person as "Earl Hopper."

at ¶ 3. The Website states that "experdocs servers are maintained . . . in Southern California." Vakil Declaration, Exhibit 7, ECF No. 14-3 at 2. Archevos markets and sells Experdocs on the Website. Second Layne Declaration at ¶ 3. Archevos does not own Experdocs. *Id.*

Defendants, or someone acting on their behalf, modified the Website "to include the following website source code and/or text . . . . : http://tweople.com/client/multi_new.js.php?id=124" (the "Source Code"). FAC at ¶ 22. The Source Code links the Website to a third party's website, http://tweople.com/client/multi_new.js.php?id=124 (the "Tweople Website"). *Id.* at ¶ 23. The Tweople Website links to the file "http://tweople.com/client/playerbase- multi.js" (the "Tweople Playerbase"). *Id.* The Tweople Playerbase infringes on LFOW's copyright in the LFOW Code. *Id.* "[W]hen a web browser retrieves a page from the [] Website, a copy of [the Tweople Playerbase] is distributed by Defendants to the website visitor" causing a "web spokesperson video [to] launch[] on [the] Website." *Id.* at ¶¶ 24, 26.

## III.  Standard of Review

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the parties have submitted declarations and exhibits in support of their motion and opposition; see ECF Nos. 12-2, 14-1, 14-2, 14-3, and 16-1; the Court considers both the allegations in the plaintiff's complaint and the declarations and exhibits submitted by the parties. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). The Court accepts as true all uncontroverted allegations in the plaintiff's complaint and "draw[s] reasonable inferences from the complaint in favor of the plaintiff." *Fiore v. Walden*, 688 F.3d 558, 574–75 (9th Cir. 2012), *rev'd on other grounds*, 134 S. Ct. 1115 (2014). However, the Court does not accept as true allegations that are contradicted by factual material submitted by the parties. *Mavrix*, 647 F.3d at 1223 (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).

## IV. Discussion

> Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits. California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same.

*Mavrix*, 647 F.3d at 1223.

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement* established that a state may exercise jurisdiction over a defendant without violating due process if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316 (1945).

> *International Shoe*'s conception of "fair play and substantial justice" presaged the development of two categories of personal jurisdiction. The first category is represented by *International Shoe* itself, a case in which the in-state activities of the corporate defendant . . . gave rise to the liabilities sued on. . . . Adjudicatory authority of this order, in which the suit arises out of or relates to the defendant's contacts with the forum, is today called specific jurisdiction.

*Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (citations and quotations omitted).

> *International Shoe* distinguished between, on the one hand, exercises of specific jurisdiction, as just described, and on the other, situations where a foreign corporation's continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities. As [the Supreme Court] ha[s] since explained, a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.

*Id.* (citations and quotations omitted).

### A. Specific Jurisdiction

#### 1. Applicable Law

The Court of Appeals has established three requirements that must be met for a court to have specific jurisdiction over a non-resident defendant. First, "The non-resident defendant must purposefully direct his activities or consummate some transaction with the

forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Purposeful "availment and direction are, in fact, two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* (citations omitted). A defendant has "purposefully direct[ed] his activities" toward a state if the defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 805 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

The second requirement that must be met for a court to have specific jurisdiction over a non-resident defendant is that "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* at 802 (quoting *Lake*, 817 F.2d at 1421). The final requirement is that "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* (quoting *Lake*, 817 F.2d at 1421).

### 2. Analysis

In order to determine whether a plaintiff has alleged that a defendant committed an intentional act, a court must examine the alleged actions of the Defendant that allegedly amount to copyright infringement. *See Mavrix*, 647 F.3d at 1228. The FAC alleges that Archevos (or someone acting on its behalf) modified the Website to include the Source Code, which links to the Tweople Website, which links to the Tweople Playerbase, which infringes on LFOW'S copyright in the LFOW Code. FAC at ¶¶ 22, 23. The FAC alleges that Archevos committed an intentional act: modifying its website to include the Source Code.

Consequently, for the Court to have specific jurisdiction over Archevos, Archevos's act of modifying the Website to include the Source Code must have been expressly aimed at California and must have caused harm that Archevos knew was likely to be suffered in

the California. *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake*, 817 F.2d at 1421). LFOW contends that Archevos's act of modifying its website to include the Source Code was expressly aimed at California because the Website "is an interactive one that allows users from any state to make purchases," "highlights the California locations for the servers," and "appeals to the technology-focused audience of California." ECF No. 14 at 7 (citing *Mavrix*, 647 F.3d at 1231). Archevos contends that "*Mavrix* makes clear that an interactive website, without more, cannot by itself be the basis for jurisdiction" and that "storing data on the California servers . . . cannot be the basis for specific jurisdiction, because storing that data is not 'suit-related conduct.'" ECF No. 16 at 6–7 (citing *Mavrix*, 647 F.3d at 1229).

In this case, the Website makes a product available for sale to persons accessing the Website from any state, including California. Second Layne Declaration at ¶ 3. That fact does not, by itself, demonstrate that the placement of allegedly infringing material on the Website was expressly aimed at California. *See Mavrix*, 647 F.3d at 1231 ("Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed."). Accordingly, the interactive nature of the Website does not give the Court specific jurisdiction over Archevos. The statement on the Website that "experdocs servers are maintained . . . in Southern California" does not demonstrate that Archevos's act of modifying the Website to include the Source Code was expressly aimed at California. Vakil Declaration, Exhibit 7, ECF No. 14-3 at 2. Finally, even if the Website does "appeal[] to [a] technology-focused audience," it does not follow that Archevos's act of modifying the Website to include the Source Code was expressly aimed at California. (ECF No. 14 at 7). *Mavrix* does not require a different result. *See Mavrix*, 647 F.3d at 1230–32 (finding that the district court had specific jurisdiction over a website owner sued for copyright infringement in part because the website and infringing material focused on "the California-centered celebrity and entertainment industries," not the technology industry). Consequently, the Court finds that LFOW has not met its burden of

establishing that the Court has specific jurisdiction over Archevos. *See Schwarzenegger*, 374 F.3d at 802 (quoting *Lake*, 817 F.2d at 1421).

### B. General Jurisdiction

#### 1. Applicable Law

LFOW contends that a court has general jurisdiction over a defendant corporation when the defendant "has 'substantial' or 'continuous and systematic' contacts with the forum state." ECF No. 14 at 4 (citing *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006)). Archevos contends that "general jurisdiction only generally exists over a corporation at 'the place of incorporation' or the 'principal place of business.'" ECF No. 16 at 3–4 (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)).

In *Daimler*, the United States Supreme Court held that, for a district court to exercise general jurisdiction over a defendant, the defendant must have affiliations with the forum State that "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id.* at 760 (alteration and omission in original) (citing Brilmayer et al., A General Look at General Jurisdiction, 66 Texas L.Rev. 721, 735 (1988)). A corporation's "principal place of business" is

> the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is . . . the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). The Supreme Court explicitly rejected a test under which general jurisdiction would have been available "in every State in which a corporation engages in a substantial, continuous, and systematic course of business" as "unacceptably grasping." *Daimler*, 134 S. Ct. at 760–61. The Supreme Court also clarified

that it has not "h[e]ld that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business; it [has] simply typed those places paradigm all-purpose forums." *Id.* at 760.

### 2. Analysis

LFOW contends that the Court has general jurisdiction over Archevos

> because Archevos is essentially a two-man operation—one of whom is working in California and one of whom is working in Arizona. The brain of the operation—the designer and president of the company—is in California. . . . The control is being exerted through its President, who works out of California.

(ECF No. 14 at 5). Archevos contends that the court does not have general jurisdiction over Archevos because "Archevos is a Wyoming Corporation, and Archevos' principal place of business is in Arizona." (ECF No. 16 at 4). Archevos contends that the following facts establish that its principal place of business is in Arizona: "Archevos has one office, which is in Arizona," "[i]t meets clients and potential clients at that office," "[i]t conducts firm business such as board meetings at that office," "[n]o such board meetings and client meetings have ever taken place in California," and "all day-by-day operations are run by Earl Hopper (an officer and shareholder of Archevos) who is in Arizona." *Id.*

Scott Layne is the President of Archevos. First Layne Declaration at ¶ 2. "Layne resides in Encinitas California." Layne Answer at ¶ 7. LFOW contends that Layne is "[t]he brain of the operation" and the person who exerts control over Archevos. (ECF No. 14 at 5). In support of that contention, LFOW cites the Declaration of Imran Vakil, LFOW's counsel, which states, in relevant part, that (1) "Layne is listed as registrant for the . . . Website, as well as the administrative contact"; (2) "Layne explained Archevos is owned and run by him and Earl Ho[p]per"; (3) "Layne informed me he is based in California"; and (4) "Layne was the only individual from Archevos who had any interaction with me after the initiation of this lawsuit." Vakil Declaration, ECF No. 14-1 at ¶¶ 14, 16, 18.

8

Earl Hopper holds stock in Archevos. Second Layne Declaration at ¶ 6. Layne declares that "[a]ll [of Archevos's] day-by-day operations are run by Earl Hopper in Arizona." *Id.* at ¶ 5. Archevos leases an office in Arizona where it "meets clients and potential clients" and "conducts firm business such as board meetings." *Id.*

The Court finds that, in light of this evidence, LFOW has not met its burden of establishing that the Court has general jurisdiction over Archevos. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). The facts submitted by the parties do not establish that Layne "direct[s], control[s], and coordinate[s Archevos]'s activities" from California; *Hertz*, 559 U.S. at 92–93; or that Archevos is "essentially at home in [California]"; *Daimler*, 134 S. Ct. at 761.

**C. Jurisdictional Discovery**

"A court may permit discovery to aid in determining whether it has in personam jurisdiction." *Data Disc, Inc. v. Systems Techn. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Jurisdictional discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

LFOW contends that the Court should permit jurisdictional discovery. (ECF No. 14 at 10). Archevos contends that "[j]urisdictional discovery is not appropriate because here there are case dispositive facts that are not controverted," including that Archevos's "principle [sic] place of business is in Arizona, not California." (ECF No. 16 at 13). The Court finds that the facts submitted by the parties create a genuine dispute as to the location of Archevos's principal place of business and whether Archevos is "essentially at home" in California. *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 564 U.S. at 919). The facts submitted by the parties do not establish that Layne "direct[s], control[s], and coordinate[s Archevos]'s activities" from California, or that Hopper "direct[s], control[s], and coordinate[s Archevos]'s activities" from Arizona. *Hertz*, 559 U.S. at 92–93. "A more satisfactory showing of the facts is necessary" before the Court can determine whether

Archevos is essentially at home in California. *Wells Fargo,* 556 F.2d at 430 n.24. The court will allow the parties a period of 60 days to engage in limited jurisdictional discovery regarding whether Archevos is essentially at home in California.[2]

## V. Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 12) will remain pending during the period of jurisdictional discovery. The parties shall file any supplemental responses within 90 days of this Order, and any replies shall be filed within 14 days of any supplemental response. Any discovery disputes will be resolved by the Magistrate Judge.

Dated: February 23, 2018

Hon. William Q. Hayes
United States District Court

---

[2] The Court denies LFOW's remaining requests for jurisdictional discovery because they do not relate to information that, under the Court's analysis in Sections IV.A and IV.B, would "bear[] on the question of jurisdiction." *Wells Fargo,* 556 F.2d at 430 n.24.